UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LUIS A. SANTIAGO, SR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 14-cv-30034-KAR |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER REGARDING
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DEFENDANT'S
MOTION FOR JUDGMENT AFFIRMING THE COMMISSIONER'S DECISION
(Document Nos. 15, 20)
February 18, 2015

ROBERTSON, U.S.M.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") regarding Luis A. Santiago, Sr.'s ("Plaintiff") entitlement to Supplemental Security Income ("SSI") and Social Security Disability Insurance benefits ("SSDI") pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). Plaintiff contends that the Commissioner's decision denying him such benefits - memorialized in a February 21, 2013 decision of an administrative law judge ("ALJ") - is in error. He has filed a motion for judgment on the pleadings seeking to remand the decision, while the Commissioner has moved to affirm.

The parties have consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons that follow, the court will deny Plaintiff's motion for judgment on the pleadings and grant the Commissioner's motion to affirm.

I. D<small>ISCUSSION</small>

The parties are well aware of the factual and procedural history of this case, the standard of review, and the applicable five-step sequential analysis. In essence, Plaintiff argues that the ALJ erred in failing to consider certain mental health limitations discussed in the opinions of a clinician and registered nurse from River Valley Counseling Center, as well as the opinion of a consultative psychiatrist, when making his residual functional capacity ("RFC") determination. Plaintiff also contends that the ALJ further erred when discounting, or ignoring, those sources' opinions by providing only vague references to the record and failing sufficiently to explain his reasoning. The Commissioner responds that the ALJ's decision is not predicated on any error and is based on substantial evidence. The court agrees.

    A. <u>Opinions of Clinician and Registered Nurse</u>

As stated above, Plaintiff argues that the ALJ improperly ignored the opinions of clinician Cheryl Przezdziecki ("Ms. Przezdziecki") and registered nurse Kathryn Proulx ("Ms. Proulx") of River Valley Counseling Center ("River Valley") when making his RFC determination.[1] More specifically, Plaintiff contends that the ALJ erred in failing to (1) assess additional mental limitations discussed in the River Valley medical records and a mental impairment questionnaire completed by Ms. Przezdziecki and (2) explain his rationale for not assessing such additional limitations. In response, the Commissioner asserts that the ALJ appropriately discounted the opinions of Ms. Przezdziecki and Ms. Proulx, both non-"acceptable medical sources," because their opinions were not supported by their own treatment notes and were inconsistent with other record evidence. The Commissioner, in the court's view, has the better argument.

---

[1] According to the River Valley medical records, during the time Ms. Przezdziecki treated Plaintiff, her credentials were listed as "M. Psych Intern."

2

As an initial matter, the Commissioner's regulations preclude an administrative law judge from giving controlling weight to opinions from those who are not "acceptable medical sources." *See* Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight"). Because Ms. Przezdziecki and Ms. Proulx, respectively, a clinician and a registered nurse, are not "acceptable medical sources" under the Commissioner's regulations, their opinions are not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d) (defining "other sources"); *see also, e.g.*, *Hustead v. Astrue*, No. 08-30119-KPN, 2009 WL 1259132, *4 (D. Mass. May 6, 2009) (nurse's opinion not entitled to controlling weight because she was not an "acceptable medical source"); *Hardin v. Barnhart*, 468 F. Supp. 2d 238, 250 (D. Mass. 2006) (same). Still, Ms. Przezdziecki and Ms. Proulx are both "other sources," whose opinions must be appropriately weighed.

As this court has explained, an administrative law judge may not "ignore 'other medical sources' or fail to adequately explain the weight given to such evidence." *Taylor v. Astrue*, 899 F. Supp. 2d 83, 88 (D. Mass. 2012). "Thus, although 'other medical sources' are not entitled to controlling weight and an administrative law judge is not required to provide 'good reasons' for the weight assigned to such opinions nor consult the factors listed in 20 C.F.R. §§ 416.927(c)(2)-(6) [or 404.1527(c)(2)-(6)]," the administrative law judge "still must adequately explain his [or her] treatment of the opinion so that a reviewer can determine if the decision is supported by substantial evidence." *Id.* at 88-89; *see Simumba v. Colvin*, No. 12-30180-DJC, 2014 WL 1032609, at *8-9 (D. Mass. Mar. 17, 2014) (reviewing administrative law judge's evaluation of opinion from an "other source"); *see also* SSR 06-03P, 2006 WL 2329939, at *3 (acknowledging

3

that Commissioner's regulations "do not explicitly address how to consider relevant opinions and other evidence from 'other sources'" and offering some guidance on how judges may evaluate an opinion from an "other source").

Here, the ALJ gave "little" weight to the opinions of Ms. Przezdziecki and Ms. Proulx because, generally, their findings were "not supported by the totality of the evidence." (Administrative Record ("A.R.") 612.) The ALJ explained that the administrative record contained minimal medication treatment records from Ms. Proulx in support of her conclusions, and similarly no counseling records of Ms. Przezdziecki other than an intake evaluation in support of her conclusions. (Id.) Further, the ALJ explained that their findings were neither internally nor externally consistent. (Id.) Prior to making these findings, the ALJ discussed the following: Plaintiff's intake evaluation where, according to Ms. Przezdziecki, he presented with severe panic and anxiety with extreme difficulty in social situations; Plaintiff's incarceration records, which did not reflect any of the severe symptoms noted by Ms. Przezdziecki or Ms. Proulx; and Plaintiff's improvements in managing his impairments, which were reflected in the River Valley treatment records and a report to another nurse practitioner. (A.R. 602, 608, 603, 612).

As the ALJ indicated, the administrative record only contains Plaintiff's intake evaluation with Ms. Przezdziecki, three medication consultations with Ms. Proulx, and the mental impairment questionnaire Ms. Przezdziecki completed on July 18, 2012. (A.R. 957-998.) During intake on October 6, 2011, Ms. Przezdziecki found Plaintiff "present[ed] with severe panic and anxiety" and observed that he was hyperactive, had "tremors/tics," and his affect was tearful, sad, anxious, and inappropriate. (A.R. 960, 964.) She found that he had "moderate" depressive symptoms and moderately impaired judgment. She also observed that he was

casually groomed, cooperative, and well-oriented with normal speech, intact thought processes, and no memory problems. Plaintiff reported panic attacks and suicide attempts and that he was afraid to the leave the house and had difficulty in social situations and with sleeping. (A.R. 960.) Ms. Przezdziecki diagnosed panic disorder with agoraphobia and depressive disorder. (A.R. 957.) She treated Plaintiff from October 2011 to February 2012.

With respect to the July 2012 questionnaire, Ms. Przezdziecki stated that Plaintiff exhibited signs of severe anxiety, panic, and paranoia that caused significant impairment in functioning and judgment. (A.R. 995-996.) She assessed marked restriction of activities of daily living, extreme difficulties in maintaining social functioning, and moderate difficulties in concentration, persistence, or pace, as well as three episodes of decompensation within twelve months. (A.R. 997-998.) She also stated that Plaintiff had "debilitating" panic and agoraphobic symptoms. (A.R. 998.)

Those limitations set forth in the questionnaire are inconsistent with the records from Plaintiff's incarceration. Although Ms. Przezdziecki was unaware of the fact that Plaintiff ceased treatment at River Valley due to his incarceration, and while consistent with a diagnosis of depressive disorder and generalized anxiety disorder, records from his incarceration do not reveal any such extreme or debilitating symptoms. (A.R. 611.) Rather, as the ALJ noted, on April 18, 2012, Plaintiff "presented no overt signs of depression, mania, anxiety, or psychosis." (A.R. 608, 1002). Moreover, other medical providers found Plaintiff with moderate, and at times mild, limitations in social functioning, concentration, persistence, and pace. (A.R. 611.)

Plaintiff first saw Ms. Proulx on December 1, 2011 for medication management. (A.R. 989.) She assessed Plaintiff with depression and identified post traumatic stress disorder, schizoaffective disorder, and bipolar disorder as possible diagnoses. (A.R. 988.) After three

5

weeks on medication, however, Ms. Proulx found Plaintiff's appearance, speech, and thought processes normal, his eye contact and rapport good, and his affect appropriate. (A.R. 985.) Plaintiff reported mild depressive symptoms, moderate anxiety symptoms with panic attacks, and paranoid thinking. (Id.) Ms. Proulx adjusted his medications accordingly. (A.R. 986.) On January 18, 2012, Plaintiff's third and final appointment with Ms. Proulx, she again found Plaintiff with normal appearance, speech, and thought processes and appropriate affect. (A.R. 983.) At that time, Plaintiff denied symptoms of depression or anxiety. (A.R. 983-984.) In weighing these pieces of evidence, including Ms. Proulx's notes and Ms. Przezdziecki's questionnaire, it is in the purview of the Commissioner - not the court - to resolve any conflicts. *Rodriguez Pagan v. Sec'y of Health and Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).

Given this evidence, the record adequately supports the ALJ's finding that Ms. Przezdziecki and Ms. Proulx's opinions were inconsistent both internally and with other evidence of record. *See Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (the Commissioner's factual findings will stand where "a reasonable mind, reviewing the evidence on the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion"); *Rodriguez Pagan*, 819 F.2d at 3 ("We must affirm the [Commissioner's] resolution, even if the record arguable could justify a different conclusion, so long as it is supported by substantial evidence."). The ALJ reasonably accorded little weight to their opinions and sufficiently explained the bases for his decision. *See Coggon v. Barnhart,* 354 F. Supp. 2d 40, 55 (D. Mass. 2005) ("A hearing officer 'can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party'") (quoting *NLRB v. Beverly Enterprises-Massachusetts, Inc.*, 174 F. 3d 13, 26 (1st Cir. 1999)); *Custodio v. Astrue*, No. 07-11876-MLW, 2010 WL 3860591, at *4 (D. Mass. Sept. 27, 2010)

6

("The ALJ also made the necessary specific findings as to much of the relevant evidence considered in determining to disbelieve plaintiff").

B. <u>Opinion of Examining Physician</u>

Plaintiff also contends that the ALJ improperly ignored a June 27, 2011 consultative examination by psychiatrist Bruce Goderez, M.D. ("Dr. Goderez"), further contributing to a flawed RFC determination.[2]  Specifically, Plaintiff asserts that the ALJ erred in failing to (1) indicate what evidence in Dr. Goderez's records he found inconsistent with the record as a whole and (2) provide any discussion of the findings of Dr. Goderez's psychological evaluation. Plaintiff stresses that Dr. Goderez noted a worsening of symptoms from his initial evaluation in 2009, namely that his mood was "subdued," and that, overall, Dr. Goderez found Plaintiff to be "moderately depressed." (A.R. 951.) Plaintiff also focuses on Dr. Goderez's opinion that he had "developed major depressive syndrome" and was "disabled by the combination of his physical and psychiatric issues." (A.R. 953, 954.) Again, the court finds Plaintiff's arguments unavailing.

Here, the ALJ accorded "limited" weight to both opinions of Dr. Goderez. With respect to the 2011 evaluation, the ALJ noted an internal inconsistency in that Dr. Goderez found Plaintiff disabled due to his mental and physical impairments, yet reported Plaintiff as having only a moderate severity of impairments, as reflected in his assigned global assessment of functioning ("GAF") score of 55. (A.R. 602, 611.) The ALJ also found that Dr. Goderez "accepted [Plaintiff's] subjective complaints with little evidence of objective observations." (A.R. 611.) While acknowledging that Dr. Goderez noted that Plaintiff presented as more subdued and moderately depressed in 2011, the ALJ explained that Dr. Goderez's "conclusions

---

[2] Dr. Goderez first evaluated Plaintiff in 2009 and for a second and final time on June 27, 2011.

[were] based purely on [Plaintiff's] reporting," and such reporting contradicted other record evidence, including Plaintiff's own reporting of his psychological history. (Id.)

In regard to the internal inconsistency between Dr. Goderez's conclusion of disability and his assignment of a GAF score of 55, a superficial discrepancy between a GAF score and a treating source's assessment is not in and of itself a sufficient basis for according little weight to a treating source's opinion. *See Thayer v. Colvin*, No. 13-30131, 2014 WL 5581272, at *3 (D. Mass. Oct. 31, 2014); *Martinez v. Colvin*, No. 13-30124, 2014 WL 3735889, at *3 (D. Mass. July 11, 2014). That being said, "the determination of the ultimate question of disability is for [the Commissioner], not for the doctors or for the courts." *Rodriguez v. Sec'y of Health and Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981); 20 C.F.R. § 404.1527(d)(1). The ALJ's other findings, namely that Dr. Goderez based his opinion primarily on Plaintiff's subjective reporting and that Plaintiff's self-reporting was inconsistent with the record, are sufficient to support the limited weight given to Dr. Goderez's 2011 opinion.

For instance, on June 27, 2011, Plaintiff reported "a long history of suicidality, with the most recent event occurring over a year ago through an attempted overdose," as well as a return to alcohol use prior to his suicide attempt to Dr. Goderez. (A.R. 602.) Plaintiff also reported that his situation had worsened since he saw Dr. Goderez two years earlier, that he hardly left his home and that he experienced symptoms similar to panic attacks when in crowds. (Id.) Plaintiff further informed Dr. Goderez that medication had helped his depression at first but that he felt it was no longer beneficial. (Id.) In light of these reported symptoms, Dr. Goderez concluded that Plaintiff had developed, among other things, major depressive disorder.[3] (Id.) The ALJ noted, however, that Dr. Goderez did not have access to Plaintiff's other medical records and made his

---

[3] Dr. Goderez also provided Plaintiff with a letter to his treating source, which recommended an increase in his psychiatric medication while Plaintiff awaited admission to a new counseling program. (A.R. 602.)

diagnoses based on "little evidence of objective observations," such as mood, affect, and ability to smile. (A.R. 611, 951.) An opinion based on such reporting need not be given substantial weight. *See Rodriguez Pagan*, 819 F.2d at 3 ("The Secretary assessed the reports of both physicians and reasonably concluded that they relied excessively on claimant's subjective complaints, rather than on objective medical findings."); *Nobrega v. Barnahrt*, No. 05-30204-KPN, 2006 WL 2358886, at *7 (D. Mass. Aug. 3, 2006) ("Here, as the ALJ noted, Plaintiff's treating physician's diagnoses were often based on Plaintiff's subjective complaints, contained little supporting objective evidence and were at times internally contradictory. That being the case, the resolution of any conflict between assessments of the consulting physicians and the treating sources remained the responsibility of the ALJ"). Moreover, "[p]sychological disorders are not always disabling per se; in particular, severe anxiety or depression is not in itself sufficient to establish eligibility for benefits absent a proper showing of related functional loss." *Sitar v. Schweiker*, 671 F.2d 19, 20-21 (1st Cir. 1982) (internal citation omitted).

With respect to Plaintiff's credibility and the inconsistencies in his own reporting, the ALJ sufficiently discussed Plaintiff's reported history of suicide attempts. (A. R. 608.) In short, the ALJ accurately set forth the conflicting information in the record in regard to this history and appropriately found that such inconsistencies created doubt as to the "veracity" of Plaintiff's report to Dr. Goderez. (A.R. 611.) *See Rodriguez*, 647 F.2d at 222 ("In reviewing the record for substantial evidence, we are to keep in mind that issues of credibility and the drawing of permissible inference[s] from evidentiary facts are the prime responsibility of the [Commissioner]").

Thus, given that Dr. Goderez saw Plaintiff only twice and that his 2011 opinion was not based on objective evidence or consistent with other evidence of record, i.e., Plaintiff's own self-

9

reporting, the ALJ did not err in according limited weight to Dr. Goderez's opinion. *See* 20 C.F.R. §§ 4416.927(c)(2), (c)(2)(i,)(ii); *Rodriguez v. Astrue*, 694 F. Supp. 2d 36, 42 (D. Mass. 2010) ("If the opinion is inconsistent . . . either internally or with other evidence, the administrative law judge is free to 'downplay' the physician's assessment") (quoting *Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004)); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[A]n [administrative law judge] may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings.") (internal citation omitted). Further, the ALJ provided specific, legitimate reasons supported by substantial evidence to discount that opinion. *See* SSR 96-2P, 1996 WL 374188, at *5 (Jul. 2, 1996) (administrative law judge's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record"); *Thayer*, 2014 WL 5581272, at *2 ("[A]n administrative law judge . . . still must provide 'good reasons' for the ultimate weight determination").

Finally, the court concludes that that the ALJ's RFC determination - that Plaintiff had "the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except limited to work [of] simple and unskilled nature . . . [with] no more than occasional co-worker or public contact" - was not erroneous. (A.R. 606.) "While Plaintiff argues that the ALJ should have assessed Plaintiff with more severe limitations based on the medical record, it is left to an administrative law judge to resolve conflicts in the evidence and, where such determinations are supported by the record, they are to be affirmed." *Hill v. Astrue*, No. 12-30018-KPN, 2012 WL 5830707, at *6 (D. Mass. Nov. 15, 2012). Contrary to Plaintiff's assertions, the ALJ did not ignore the opinions of Ms. Przezdziecki, Ms. Proulx, or Dr. Goderez in making his RFC determination. Rather, he recognized certain psychological limitations,

explaining that he limited Plaintiff "to simple, unskilled tasks to account for his depression and anxiety[,] making concentration and sustained drive on more complex tasks difficult," and he further stated, "[g]iving some benefit to [Plaintiff's] issues with anxiety, [he is limited to] occasional contact with both –coworkers and the public. [Plaintiff's] earliest records do note a history of anxiety (Exhibit 2F, pages 10-11 for example), which lends a slim margin of credibility regarding the long-standing issues with anxiety and discomfort around others." (A.R. 606.) Therefore, notwithstanding the opinions at issue, the ALJ's determination conforms with substantial evidence of record.

## II. CONCLUSION

For the reasons stated, Plaintiff's Motion for Judgment on the Pleadings is DENIED, and the Defendant's Motion for Order Affirming the Decision of the Commissioner is GRANTED.

It is So Ordered.   /s/ Katherine A. Robertson
                    KATHERINE A. ROBERTSON
DATED: February 18, 2015   United States Magistrate Judge